**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 10 CR 80 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| AZTECA SUPPLY CO., AURORA VENEGAS, | ) | |
| and THOMAS MASEN, | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Government's motion to admit evidence [43], the Government's Santiago Proffer [44], the Government's consolidated motions in limine [45], and Defendants' preliminary motion in limine [46]. For the reasons set forth below, the Court reserves ruling on the Government's motion to admit evidence [43]; reserves ruling on the admissibility of the co-conspirator statements set out in the Government's Santiago Proffer [44]; grants in part and denies in part the Government's consolidated motions in limine [45]; and grants Defendants' preliminary motion in limine [46].

**I.    Background**

On February 4, 2010, a grand jury returned a six count indictment, charging Defendants Azteca Supply Co., Inc. ("Azteca"), Aurora Venegas, and Thomas Masen with mail fraud in violation of 18 U.S.C. § 1341.[1]  As charged in the indictment, the Government alleges that Defendants devised and participated in a scheme to defraud the City of Chicago ("the City") and the Village of Orland Park ("the Village") of money and property – specifically, contracts for minority business enterprises ("MBEs"), women's business enterprises ("WBEs"), and/or disadvantaged business enterprises ("DBEs"), as well as funds paid pursuant to those contracts. Indictment ¶ 2.  The indictment sets forth the requirements for the pertinent MBE, WBE, and

---

[1]  Count Six, which alleges that Defendant Masen made a false statement to the FBI, is not the subject of the present motion.

DBE programs, and alleges that Aurora Venegas and Azteca Supply Company falsely represented that they met certain program requirements when in fact they did not. *Id.* at ¶¶ 1-6. The indictment further alleges that Thomas Masen used Azteca Supply Company as a "pass-through," meaning that Masen's own company performed work that was supposed to be performed by Azteca Supply Company, and that Azteca Supply Company was not performing the functions required under the MBE, WBE, or DBE programs. *Id.* at ¶ 7-8.

The indictment describes three separate contracts or subcontracts that were part of the fraudulent scheme. Indictment ¶ 9-21. With respect to the first contract, known as the "O'Hare Contract," the City of Chicago engaged Azteca to provide feminine hygiene disposal systems in the women's bathrooms at O'Hare Airport. According to the indictment, Venegas represented that Azteca "would itself provide 95% of the value of the O'Hare Contract," but in reality "did no significant work" and subcontracted "all significant portions of the work." Aurora Venegas and Azteca Supply Company received approximately $638,000 in payments from the City of Chicago for the "O'Hare Contract." *Id.* at ¶ 11.

With respect to the second contract, known as the "Main Street Triangle Project," the Village of Orland Park contracted with Company F to construct a new Metra train station. According to the indictment, "Company F agreed to use good faith in hiring MBEs and WBEs that were certified by Metra" and further "agreed that the MBE goal for the Main Street Triangle Project was 10% of the cost of the work, and that the WBE goal for the project was 5% of the cost of the work." Indictment ¶ 1(o). Company F in turn subcontracted with Company C to provide landscaping services for the project. *Id.* at ¶ 1(p). Company C's subcontract with Company F required it "to provide a minimum of 10% MBE and 5% WBE participation." *Id.* The indictment further charges that Company C arranged to purchase certain plants from

Company D, then representatives from Companies C and D approached Defendant Venegas and asked her "to act as a pass-through for the landscaping subcontract." *Id.* at ¶ 12. The indictment alleges that Azteca had no role in providing the plants to Company C yet generated documents to make it appear that Azteca had purchased the plants from Company D and supplied them to Company C. *Id*. at ¶ 14. Aurora Venegas and Azteca Supply allegedly received a total of approximately $57,168 in payments from the Main Street Triangle Project. *Id.* at ¶ 15.

With respect to the third contract, the "O'Hare Runway Subcontract," Azteca supplied reinforced concrete pipe to Company E, which contracted with the City of Chicago to rebuild a runway as part of the O'Hare Modernization Program. Indictment ¶¶ 1(q), 16. The City's contract with Company E allegedly required "at least 24% MBE and 4% WBE participation" and "credit would only be given to MBEs and WBEs that performed a commercially useful function." *Id.* at ¶¶ 1(q), 1(r). Azteca allegedly "provided no useful services to Company E." *Id.* at ¶ 17. Instead, the indictment charges that Company E dealt directly with Company A, the concrete pipe manufacturer that employed Defendant Masen, and Masen allegedly directed Azteca as to how much it should charge Company E for pipe, how much profit Azteca should make, and how much Azteca should pay the trucking company to deliver the pipe to O'Hare. *Id.* at ¶¶ 17-19. Azteca Supply Company received more than $9,000,000 in payments from the O'Hare Runway Subcontract. *Id.* at ¶ 21.

## II. Legal Standard

A motion *in limine* is a motion "at the outset" or one made "preliminarily." BLACK'S LAW DICTIONARY 803 (8th ed. 2004). The power to rule on motions *in limine* inheres in the Court's role in managing trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because

3

[it] clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997) (observing that, when used properly, the motions may sharpen the issues for trial). The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose. *Robenhorst v. Dematic Corp.*, 2008 WL 1766525, at *2 (N.D. Ill. Apr. 14, 2008).

Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989); see also *Luce*, 469 U.S. at 41-42 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). In addition, if the *in limine* procedural environment makes it too difficult to evaluate an evidentiary issue, it is appropriate to defer ruling until trial. *Jonasson*, 115 F.3d at 440 (delaying until trial may afford the judge a better opportunity to estimate the evidence's impact on the jury). Finally, although motions *in limine* typically address evidentiary matters, they may also relate to other matters, such as affirmative defenses and proper lines of inquiry at trial. See, *e.g.*, *United States v. McCloud*, 590 F.3d 560, 566-68 (8th Cir. 2009) (affirming trial court's *in limine* ruling regarding a mistake-of-age defense); *United States v. Price*, 520 F.3d 753 (7th Cir. 2006) (recounting a case's procedural history).

### III.     Defendant's Preliminary Motion in Limine

In Defendants' motion in limine, Defendants request that the following three categories of evidence be excluded from the Government's case in chief: (1) evidence of purported "bid rigging" of the O'Hare Contract; (2) evidence related to various political contributions made by Defendants; and (3) evidence related to certain mortgage loans applied for by employees or

affiliates of Defendant Azteca Supply Co. Defendants represent, and the Government has not disputed, that counsel for Defendants and the Government have conferred and that the Government indicated that it does not intend to seek the admission of these categories of evidence in its case in chief. Therefore, Defendants' motion in limine is granted.

## IV. Government's Motion to Admit Evidence

At trial, the Government intends to present evidence regarding the O'Hare Contract, the Main Street Triangle Project, and the O'Hare Runway Subcontract. The Government also intends to present evidence regarding alleged acts of concealment that Venegas took in order to hide the fraudulent scheme, such as by staging the Azteca warehouse with borrowed merchandise, and pretending to have inventory that did not exist. Additionally, the Government intends to present other evidence to establish that Azteca was not a legitimate MBE, WBE, or DBE, in that it was not operated independently from Thomas Masen and his company, it was not actually performing commercially useful functions in many of its contracts, and it was not equipped to function as a legitimate business.

The Government contends that all of the evidence described in its motion to admit "is admissible as direct evidence of the fraudulent scheme charged in the indictment." Motion at 6. According to the Government, "[e]very one of the proposed items of evidence relates directly to one of the paragraphs in the indictment defining the scheme to defraud." *Id.* at 10. Direct evidence of a crime "is almost always admissible against a defendant." See *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). In determining whether a matter is direct evidence of guilt, or rather is "other bad acts" evidence governed by Rule 404(b), courts look to the scope of the indictment itself. See *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009). "When

evidence is embraced by the conspiracy in the indictment, the court need not resort to Rule 404(b) analysis." *Id*.

Based on the Government's representations, the Court need not undertake a Rule 404(b) analysis or issue a Rule 404(b) ruling at this time. See *Alviar*, 573 F.3d at 538. Because no pretrial ruling from the Court is necessary to allow the Government to present relevant, direct evidence of the charged scheme at trial, the Court reserves ruling on the Government's motion to admit evidence under Rule 404(b). In the event that the Court determines at trial that certain evidence that the Government seeks to introduce is *not* direct evidence of the charged scheme, then the Court will revisit on the Government's alternative request that the evidence be admitted under Rule 404(b).

## V. Government's Santiago Proffer

### A. Legal Standard Governing the Admission of Co-conspirator Statements

The law governing the co-conspirator exception to the hearsay rule is well-settled. Under Rule 801(d)(2)(E) of the Federal Rule of Evidence, statements made by a co-conspirator during the course and in furtherance of the conspiracy are not hearsay. *United States v. Williams,* 44 F.3d 614, 617 (7th Cir. 1995). Rule 801(d)(2)(E) applies not only to conspiracies, but also to joint ventures.[2] *United States v. Kelly*, 864 F.2d 569, 573 (7th Cir. 1989). Consequently, a formal conspiracy charge is not a prerequisite for the admission of statements under Rule 801(d)(2)(E), if the government establishes that a "criminal venture existed and that the statements took place during and in furtherance of that scheme." *United States v. Reynolds,* 919 F.2d 435, 439 (7th Cir. 1990); *Kelly,* 864 F.2d at 573. For a statement to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence that (1) a conspiracy (or joint venture) existed; (2) the defendant and the person making the statement were

---

[2] The Court will use the terms "conspiracy" and "joint venture" interchangeably in this opinion.

6

members of the conspiracy (or joint venture); and (3) the statement was made during the course and in furtherance of the conspiracy (or joint venture). *United States v. Brookins,* 52 F.3d 615, 623 (7th Cir. 1995); *United States v. Stephens,* 46 F.3d 587, 597 (7th Cir. 1995).

Generally, district courts make a ruling on the admissibility of a co-conspirator's statements pursuant to Rule 104(a) before they are admitted at trial. *United States v. Santiago,* 582 F.2d 1128, 1130-35 (7th Cir. 1978); *United States v. Cox,* 923 F.2d 519, 526 (7th Cir. 1991). In determining both the existence of a conspiracy (or joint venture) and a defendant's participation in it, the court can consider the statements sought to be admitted. *Williams,* 44 F.3d at 617; see also *Bourjaily v. United States,* 483 U.S. 171, 180 (1987). While the admissibility of conspirators' declarations "is not contingent on demonstrating by non-hearsay evidence either the conspiracy or a given defendant's participation," *United States v. Martinez de Ortiz,* 907 F.2d 629, 634 (7th Cir. 1990) (en banc), the contents of the proffered co-conspirator statements "are not alone sufficient" to establish the existence of a conspiracy and a defendant's participation in it. Fed. R. Evid. 801(d)(2)(E). In addition to the co-conspirator statements themselves, the Court must consider the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or the evidence corroborating the contents of the statement. *United States v. Zambrana,* 841 F.2d 1320, 1344-45 (7th Cir. 1988).

"To show that a defendant was involved in the conspiracy, the government must show that he '(1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme.'" *United States v. Stephenson*, 53 F.3d 836, 843 (7th Cir. 1995) (quoting *United States v. Sullivan,* 903 F.2d 1093, 1098 (7th Cir. 1990)). However, "[t]he government is not required to prove that there was a formal agreement, and circumstantial evidence indicating the defendant's membership in the conspiracy can also be considered." *Id.* (citing *United States v. Schumpert*,

958 F.2d 770, 773 (7th Cir. 1992)).

## B. Alternative Grounds for the Admission of Statements

In this case, the Government contends that the statements of co-schemers set forth in the proffer are admissible as non-hearsay under the co-schemer doctrine. However, the Government also has indicated that it believes that there are alternative bases for the admission of the statements, and that those bases do not require a Rule 801(d)(2)(E) analysis. Included in the alternative bases are (1) agency admissions pursuant to Rule 801(d)(2)(D), (2) non-hearsay statements, and (3) the business records exception under Rule 803(6). In their response and during the final pre-trial conference, Defendants have not disputed that the Government has adequately proffered the existence of a scheme by which Venegas and her husband, Thomas Masen, defrauded various entities of contracts and funds paid pursuant to contracts by falsely representing that Azteca met the requirements for MBE/WBE/DBE certification. However, Defendants do object to the admission of some of the statements on the grounds that the statements (1) are not statements of a co-conspirator and/or (2) are not statements made in the furtherance of the proffered scheme.

Although Defendants object to the admission of the proffered statements under the co-schemer doctrine, Defendants have indicated that they currently have no basis to dispute the Government's alternative arguments concerning admissibility of the evidence in question under principles of agency (Rule 801(d)(2)(D)). Similarly, Defendants have not objected to the admission of certain documents referenced by the Government as being admissible under Rule 803(6)'s business records exception, subject to the Government satisfying the requirements of that exception as to the specific documents. Given the apparent common ground on the agency and business records grounds, the Court reserves ruling on the Government's request that the

proffered co-schemer statements are admissible under Rule 801(d)(2)(E). In the event that the statements that the Government seeks to introduce are found to be inadmissible under either an agency theory or the business records exception, the Court will revisit whether the statements are admissible under Rule 801(d)(2)(E).

## VI. Government's Consolidated Motions in Limine

### A. Evidence or Argument Regarding Potential Penalties

The Government moves to preclude Defendants from introducing evidence, making argument, or otherwise mentioning the potential penalties that Defendants face if convicted. Defense counsel represent that they have no intention of making arguments about the potential penalties faced by Defendants. Therefore, the Court grants the Government's motion in limine to bar Defendants from introducing evidence, making argument, or otherwise mentioning the potential penalties that Defendants face if convicted, consistent with the Federal Rules of Criminal Procedure and Federal Rules of Evidence. However, this ruling does not preclude Defendants from cross-examining any cooperators or government witnesses about penalties that they may face and benefits that they have received – or may receive – from the Government, including whether they were given immunity or promised leniency.

### B. Evidence or Argument Regarding Prosecutorial Decisions

The Government seeks to bar Defendants from arguing, or otherwise presenting evidence, regarding the prosecutorial decision to investigate or prosecute these defendants, including (1) "[e]vidence or argument regarding the lack of prosecution of other potentially culpable individuals or entities, including certain of Azteca's customers and vendors, and (2) "[e]vidence or argument regarding the fact that the state did not charge defendants with a violation or crime, or that federal or local agencies performed inspections and continued to

certify Azteca. According to the Government, it does not seek to preclude Defendants from making inquiries into animus or bias during cross-examination (see, *e.g.*, *United States v. Boender*, 2010 WL 811296 at *4 (N.D. Ill. Mar. 3, 2010)); see also *United States v. Salem,* 578 F.3d 682, 686 (7th Cir. 2009) ("Proof of bias or motive to lie is admissible impeachment evidence."); *United States v. Bland,* 517 F.3d 930, 933, 934 (7th Cir. 2008) (discussing undisclosed misconduct and the Government's concession that the information would have been relevant for impeachment purposes).

Defendants represent that they (1) will not argue or otherwise present evidence regarding the prosecutorial decision to investigate and prosecute these Defendants; (2) will not argue that the fact that another individual was not indicted is evidence of Defendants' innocence; and (3) will not argue that the absence of state charges is evidence of Defendants' innocence. Thus, the Government's motion as it pertains to these specific issues is granted, consistent with the Federal Rules of Criminal Procedure and Federal Rules of Evidence.

However, the Court reserves ruling on the Government's broader requests seeking to exclude any "[e]vidence or argument regarding the lack of prosecution of other potentially culpable individuals or entities" or evidence that "federal or local agencies performed inspections and continued to certify Azteca." Defendants maintain that they must be allowed to inquire of "other potentially culpable individuals" whether they intended to defraud anyone through their dealings with Defendants, what representations were made to them by the Government that may have motivated their cooperation or biased their testimony, and whether they were asked for or were granted immunity. Additionally, Defendants contend that evidence of Defendants' interactions with the city – including site visits by city inspectors, access the City had to the business and financial records of Defendants, and the City's decisions to re-certify Azteca after

reviewing the records and conducting inspections – is relevant to the question of whether Defendants intended to defraud the City, or instead acted in good faith in attempting to comply with applicable MBE/WBE/DBE regulations. The Court will consider the relevance of this evidence in light of the testimony presented at trial and determine whether such evidence is admissible. In the event that the Court finds evidence of the kind described by Defendants to be relevant and admissible, the Court also will consider argument from the Government as to whether the introduction of "good faith" evidence opens the door to evidence that, for example, Defendants relied on political contributions or "favors" in order to maintain Azteca's certification.

### C. Evidence of Defendants' Lawful Behavior

The Government asks the Court to exclude all evidence of Defendants' lawful behavior and/or good conduct except reputation or opinion evidence offered by character witnesses in accord with the limitations of Federal Rule of Evidence 405(a). The evidence that the Government seeks to preclude includes the following: (1) evidence regarding other Azteca contracts that are not part of the alleged scheme to defraud ("Azteca's other contracts"); (2) evidence regarding any commercially useful function or actual work that Defendants may have performed on Azteca's other contracts; and (3) evidence regarding any inventory that Azteca may have owned in connection with Azteca's other contracts. Defendants represent that they do not intend to establish their "innocence * * * through proof of the absence of criminal acts on other specific occasions." However, Defendants again maintain that the Government's examples of the evidence it seeks to preclude go beyond that which would be excluded by the authority it cites. The Court reserves rulings on this issue for trial, but provides the following guidance.

Without citation to any controlling Seventh Circuit precedent in its opening brief, the Government maintains that the law on this issue is "clear." See *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity and finding that "[a] defendant may not seek to establish his innocence * * * through proof of the absence of criminal acts on [other] specific occasions."). While the main principle – that a defendant cannot establish innocence on current charges by demonstrating the absence of illegal conduct in conduct not charged – is fairly clear, whether the Government's examples fit entirely within that principle is less obvious.

The Government represents in its pretrial motions that it intends to prove that, during a seven-year scheme, Azteca was "not a legitimate MBE, WBE, or DBE," did "not perform[] commercially useful functions in many of its contracts," and "was not equipped to function as a legitimate business." Furthermore, the indictment alleges that Venegas "falsely represented to the City of Chicago," presumably in her annual recertification submissions, "that she performed a commercially useful function and that she did not perform brokering services." The indictment further alleges that Defendants' false representations caused Azteca to maintain its certification by the City, which certification was honored on a reciprocal basis by other agencies. Defendants contend that if the Government claims that representations made by Defendants to the city were false and that the City relied on those falsities in continuing to recertify Azteca, then Defendants are entitled to introduce evidence of their dealings with the City and their broader business relationships to show that they believed in good faith that the representations made to the city were truthful and honest at the time they were made, that Azteca could and did function as a

legitimate minority business, and that the City had full knowledge about Azteca's business in making its certification decisions.[3]

The evidence described by Defendants appears to be relevant. After all, Federal Rule of Evidence 401 defines the term broadly. But Rule 402 provides that the Federal Rules of Evidence (along with the Constitution or statutes), may make inadmissible evidence that is otherwise relevant. Rule 404 is one such rule. The Rule provides: "Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except * * * [i]n a criminal case, evidence of a pertinent trait of character offered by an accused." Fed. R. Evid. 404(a)(1). Thus, within the bounds of Rules 404 and 405, an accused in a criminal case can present evidence of his character or trait of character, which of course would "open the door" to rebuttal by the Government. For example, Rule 404(a)(1) would allow Defendants to introduce evidence that they have the character trait of honesty in their business dealings, at which point the Government may introduce "evidence of [the] pertinent trait of character * * * to rebut the same" (*id.*) – provided that the trait (in this example, honesty) is pertinent to an issue in the case. But Rule 405 teaches that there are limitations on how the trait of character may be proved: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." Fed. R. Evid. 405.

---

[3] Defendants have not cited any case law in support of their position on this issue.

In short, even if evidence of lawful behavior is "relevant,"[4] it still may be excluded under Rule 404 as impermissible propensity evidence. See, *e.g., United States v. Willams,* 205 F .3d 23, 34 (2d Cir. 2000) (evidence of innocent travel to Jamaica was not necessary to a defendant's defense involving culpable drug-trafficking related travel to Jamaica): *Jones v. Stinson,* 229 F.3d 112, 120 (2d Cir. 2000) (propensity evidence properly excluded); *United States v. Heidecke,* 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment."); *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions."); *United States v. Marrero,* 904 F.2d 251, 260 (5th Cir. 1990) (evidence of noncriminal conduct generally not admissible to rebut evidence of a specific incident of misconduct). Thus, to the extent that Defendants attempt to offer evidence related to lawful conduct as propensity evidence, they are barred by doing so by the Federal Rules of Evidence. However, the Court will not make pretrial rulings excluding categories of evidence based on the Government's position that such evidence could conceivably be argued for an improper purpose. The Court will consider the relevance and admissibility of Defendants' evidence in light of the testimony presented at trial.

---

[4] In fairness, courts sometimes mistakenly refer to the issue as relevance rather than propensity evidence. See, *e.g., United States v. Grimm,* 568 F.2d 1136, 1138 (5th Cir. 1978) (stating that evidence "of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant," although further reasoning that the admission of the evidence would have complicated the case and confused the jury). The better way to understand propensity evidence is as a specific implementation of Rule 403's exclusion of evidence that may confuse or prejudice the jury. *Cf.* Graham C. Lilly, PRINCIPLES OF EVIDENCE 67 (2006) (discussing the history of Article IV of the Federal Rules of Evidence).

### D. Evidence or Argument Designed to Elicit Jury Nullification

The parties agree that it is improper to seek jury nullification. A "defendant has no right to invite the jury to act lawlessly." *United States v. Perez,* 86 F.3d 735, 736 (7th Cir. 1996) (defendant has right to defenses only where there is "some support in the evidence"); see also *United States v. Jenkins,* 419 F.3d 614, 618 (7th Cir. 2005). Defendants do not take issue with the general proposition, but the parties appear to be odds over whether specific arguments should be admitted. The Government contends that evidence or arguments of jury nullification in this case include: (1) the culpability of uncharged individuals and entities; (2) the impropriety of MBE/WBE/DBE programs as a matter of policy and/or as implemented by municipalities including the City of Chicago and the Village of Orland Park; and (3) that Defendants should not be convicted because those municipalities received all of the goods and services required under their contracts with Azteca. Defendants represent that they will not argue the impropriety of MBE/WBE/DBE programs as a matter of policy and/or as implemented by the municipalities, and will not argue that Defendants should not be convicted because those municipalities received all of the goods and services required under their contracts with Azteca. Accordingly, the Court grants the Government's motion in limine in those respects.

However, argument or questioning about the motivation for investigating this case or arguments regarding the culpability of uncharged individuals and entities may be relevant for impeachment purposes. The Government's motion puts no apparent limits on inquiries into the motivation of witnesses – thus, the motion "goes too far." Because the Government has not put a fine enough point on what should stay out of the trial, and an accused is generally allowed to impeach a witness's credibility through, among other things, demonstrating that the witness was biased (*Salem,* 578 F.3d at 686), that portion of the Government's motion *in limine* is denied.

The Court cannot speculate as to whether Defendant can marshal any such impeachment evidence. See also *Boender*, 2010 WL 811296, at *4.

### E. Argument or Evidence of Alibi

The Government also asks the Court to preclude defendant Venegas from arguing or otherwise presenting evidence predicated on an alibi defense. Defendants have acknowledged that they have not complied with the notification and disclosure requirements of Federal Rule of Criminal Procedure 12.1 and have added that no alibi defense is conceivable based on the offense charged. Accordingly, the Government's motion in limine on the alibi issue is granted.

### F. Impropriety of Discovery Requests or Commentary Regarding Discovery in Presence of Jury

The Government asks the Court to preclude both sides from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Defendants maintain that they cannot conceive of a situation where they would do any of the things listed by the Government, but that if such a situation arises, Defendants agree to notify the Court before any comment is made in front of the jury. Accordingly, the Government's motion in limine is granted and both sides will be required to notify the Court of any additional discovery requests prior to commenting on those requests in the presence of the jury. See *United States v. Quinones*, 2003 WL 22697503 at *3 (N.D. Ill. 2003) (ordering that "all requests for additional discovery are to be made outside the presence of the jury").

## IV. Conclusion

For the reasons stated above, the Court reserves ruling on the Government's motion to admit evidence [43]; reserves ruling on the admissibility of the co-conspirator statements set out

in the Government's Santiago Proffer [44]; grants in part and denies in part the Government's consolidated motions in limine [45]; and grants Defendants' preliminary motion in limine [46].

Dated:  December 1, 2010        _____
                                Robert M. Dow, Jr.
                                United States District Judge